```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MICHAEL OWUSU-SAKYI,                        NOT FOR PRINT OR
                                            ELECTRONIC
                    Petitioner,             PUBLICATION

     -against-                              **MEMORANDUM AND ORDER**

WARDEN DUKE TERRELL,                        10-CV-507 (KAM)

                    Respondent.
----------------------------------------X
```
**MATSUMOTO, United States District Judge:**

*Pro se* petitioner Michael Owusu-Sakyi ("petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons ("BOP") violated his constitutional rights by not allowing him to serve the remainder of his sentence in a Residential Reentry Center ("RRC") or in home confinement. (Doc. No. 1, Pet'r Mem. in Support of a Pet. for a Writ of Habeas Corpus ("Pet.") at 2.) Despite petitioner's failure to exhaust the administrative remedies available to him, petitioner seeks an order of the court directing the BOP to immediately transfer him to an RRC pursuant to the Second Chance Act, 18 U.S.C. § 3624 ("Second Chance Act" or "Act"). (Pet. at 4.) Petitioner claims that exhaustion is futile because the 2002 and 2005 BOP policies regarding RRC placement are contrary to the Second Chance Act of 2007, and therefore invalid. (Pet. at 3-4.) While the court

commends petitioner both on his well-written petition and his obvious commitment to successfully reintegrating into society upon his release from prison, and also sympathizes with the difficult economic conditions petitioner will undoubtedly face upon his release, for the reasons that follow, the petition is denied.

## BACKGROUND

**1. Factual Background**

Petitioner is currently serving a 60-month sentence at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, following his conviction for violating 18 U.S.C § 924(c). (Pet. at 2; Doc. No. 8 Resp't Opp'n to Pet. for Writ of Habeas Corpus ("Opp'n") at 3.) Petitioner is scheduled to be transferred to an RRC on December 2, 2010, and to be released from BOP custody on March 4, 2011 assuming he receives all possible good time credit. (Doc. No. 8-1, Decl. of Kevin Page ("Page Decl.") at Ex. 1.)

On October 24, 2009, petitioner met for an initial classification with the division of the BOP, known as a Unit Team, which is responsible for making RRC placement recommendations for MDC prisoners. (Page Decl. at ¶ 5.) The Unit Team recommended to the BOP Community Corrections Manager ("CCM") that petitioner be placed in an RRC on September 8,

2010, to serve the final 178 days of his confinement. (Page Decl. at ¶ 6.)

Upon receipt of this referral, on December 16, 2010, the CCM contacted Hope Village, the RRC where petitioner would be placed. (Doc No. 8-2, Decl. of William Cimino ("Cimino Decl.") at ¶ 3.) Hope Village represented to the CCM that a bed would not become available for petitioner until December 2, 2010, enabling petitioner to serve only the final 92 days of his sentence at the RRC. (Opp'n, at 4; Cimino Decl. at ¶¶ 7-8.) Based on this representation, the CCM assigned petitioner an RRC transfer date of December 2, 2010, which would allow petitioner to serve the final 92 days of his sentence at Hope Village. On February 1, 2010, petitioner filed the instant action, seeking an order immediately transferring him to an RRC for the remainder of his sentence. (Pet. at 3-4).

**2. Legal and Policy Background**

The BOP's authority to place and transfer prisoners is derived from two statutory sections. The first, 18 U.S.C. § 3621, governs the BOP's general authority to designate a prisoner's place of imprisonment. 18 U.S.C. § 3621(b).[1] The

---

[1] Section 3621(b) provides, in relevant part: "The [BOP] shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). That section also sets forth five statutory factors the BOP must consider when deciding where and how long a prisoner will be placed in an RRC:

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court

3

second, 18 U.S.C. § 3624, governs the BOP's authority to prepare prisoners for reentry into the community by, *inter alia*, placing them in RRCs.  18 U.S.C. § 3624(c).[2]

The interpretation of, and interplay between, these two statutory sections has recently evolved.[3]  Thus, in recent years, two iterations of BOP policy regarding RRC placement were invalidated by courts.  Specifically, courts found that a BOP policy adopted in 2002 ("2002 BOP Policy"),[4] and a BOP rule adopted in 2005 ("2005 BOP Rule"),[5] which both limited inmate RRC placements to the last ten percent of an inmate's term, impermissibly constrained BOP RRC placement in contravention of the broad discretion afforded to the BOP by statute in 18 U.S.C. §§ 3621 and 3624.  *See, e.g., Levine v. Apker*, 455 F.3d 71, 75 (2d Cir. 2006)(discussing case law which found the 2002 BOP

---

> that imposed the sentence (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted or (b) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b)(1-5).

[2]  Section 3624(c) provides, in pertinent part: "The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. 3624(c).

[3]  This opinion does not endeavor to fully detail the history of BOP RRC placement policy, as have several court decisions.  *See, e.g., Levine v. Apker*, 455 F.3d 71, 73-77 (2d Cir. 2006) (collecting cases).  Rather, this opinion focuses on recent policy changes relevant to the instant motion.

[4]  The 2002 Bop Policy was set forth in a December 13, 2002 memorandum by the Office of Legal Counsel at the Department of Justice.

[5]  The 2005 BOP Rule was codified in 28 C.F.R. §§ 570.20-21 (2005).

4

Policy "contrary to the plain meaning of § 3621(b)" and holding, in agreement with the Third and Eighth Circuits, that the 2005 BOP Rule is "an improper exercise of the BOP's rulemaking authority" because it unlawfully contradicts 18 U.S.C. § 3621(b)).

Following these decisions, in 2008 Congress enacted the Second Chance Act of 2007 ("Second Chance Act") in an attempt to improve prisoner reentry. *See* Pub. L. No. 110-199, 1222 Stat. 657 (2008) (codified as amended at 18 U.S.C. §§ 3621, 3624). The Second Chance Act modified Title 18 U.S.C. § 3624(c) in three notable ways: (1) it doubled the maximum pre-release RRC placement period from 6 to 12 months, (2) it required the BOP to make RCC placement decisions on an individual basis, and (3) it required the BOP to ensure that, consistent with the factors in Section 3621(b), the duration of the RRC placement period gives the inmate the greatest likelihood of successful community reintegration. *See* 18 U.S.C. § 3624(c); *see also Strong v. Schultz*, 599 F. Supp. 2d 556, 562 (D.N.J. 2009).

In 2008, to give effect to the Second Chance Act and to cure the infirmities of the 2002 BOP Policy and the 2005 BOP Rule, the BOP adopted 28 C.F.R. § 570.22 (Oct. 21, 2008) ("2008 BOP Rule"). The 2008 BOP Rule allows for community confinement in RCCs within the last 12 months of an inmate's custody term in

5

accordance with the Second Chance Act. 28 C.F.R. § 570.22 (2008). The 2008 BOP Rule does not require an inmate to have served a specific percentage of his term of imprisonment before being considered for community confinement. *Id*. The 2008 BOP Rule requires the BOP to determine pre-release community confinement on an "individual basis." *Id*. In addition, an April 14, 2008 BOP Memorandum directs that "inmates must now be reviewed for pre-release RRC placements seventeen to nineteen months before their projected release dates." *See Bernard v. Roal*, No. 09-cv-3740, 2010 WL 2308198 at *4 (S.D.N.Y. June 10, 2010).

Several courts have found that the 2008 BOP Rule complies with the Second Chance Act because it tracks the statute's requirements of individualized determinations and allows for end-of-sentence RRC placement for the full 12 month period permitted by statute. *See, e.g., Creager v. Chapman*, No. 09-cv-713-A, 2010 WL 1062610, at *2 (N.D. Tex Mar. 22, 2010) (finding that the 2008 regulations conform to the Second Chance Act); *Hewitt v. Jett*, No. 09-cv-1676, 2010 WL 1417654, at *6 (D. Minn. Mar. 15, 2010) (same).

**DISCUSSION**

**1. Petitioner Failed to Exhaust Available Administrative Remedies**

The Second Circuit has established that a prerequisite to federal habeas relief pursuant to 28 U.S.C. § 2241 is the exhaustion of administrative remedies. *See Carmona v. U.S. Bureau of* Prisons, 243 F.3d 629, 634 (2d Cir. 2001). However, the requirement of exhaustion regarding § 2241 petitions is "prudential, not statutory." *Pimentel v. Gonzales,* 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005). The exhaustion requirement "protect[s] the authority of administrative agencies, limit[s] interference in agency affairs, develop[s] the factual record to make judicial review more efficient, and resolv[es] issues to render judicial review unnecessary." *Beharry v. Ashcroft,* 329 F.3d 51, 62 (2d Cir. 2003). Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the court that the failure to exhaust should be excused. *See Carmona*, 243 F.3d at 634.

Thus, federal inmates who seek to challenge the conditions of their confinement must first utilize the Administrative Remedy Program ("Program") developed by the BOP. *See Lopez v. Terrell,* 697 F. Supp. 2d 549, 555-56 (S.D.N.Y. 2010); *see also* 28 C.F.R. §§ 542.10-19. Specifically, inmates

7

must exhaust each of four steps in the Program: (1) attempting to resolve the issue informally, *see* 28 C.F.R. § 542.13; (2) submitting a formal written Administrative Remedy Request to the institution at which the inmate is housed within twenty days of the date on which the basis for the complaint occurred, *see id.* § 542.14; (3) appealing an unfavorable decision at the institutional level to the Regional Director of the BOP within twenty calendar days of the date the warden signed the response, *see id.* § 542.15; and (4) appealing an unfavorable decision at the regional level to the BOP's General Counsel within thirty calendar days of the date the Regional Director signed the response. *See id.* Petitioner acknowledges that he did not exhaust any of these steps, but instead appealed directly to the district court. (Pet. at 3-4.)

A court can excuse a failure to exhaust administrative remedies "when such exhaustion would be futile or where the agency has predetermined the issue before it." *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009) (internal quotation omitted); *see also Sulayao v. Shanahan,* 09-cv-7347, 2009 WL 3003188, at *3 (S.D.N.Y. Sept. 15, 2009) ("If . . . Congress has *not* explicitly required exhaustion, [the] judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative exhaustion under certain circumstances. Futility is one of those circumstances.")

(internal citations and quotation marks omitted)(emphasis added). Under the habeas statute, exhaustion is futile, and the failure to exhaust may be excused, when the administrative procedures cannot provide the requested relief or when circumstances exist that render the procedures ineffective. 28 C.F.R. § 2254(b)(1)(B); *see also Fama v. Comm'r of Corr. Services,* 235 F.3d 804, 808 (2d Cir. 2000).

Here, there is no dispute that petitioner failed to exhaust the administrative remedies that were available to him. Petitioner acknowledges as much (Pet. at 2-3.), and instead argues that the court should not require exhaustion because he is challenging the validity of the BOP policies rather than their application. (*Id.*) Petitioner's futility argument cannot succeed. Petitioner appears to have based his futility argument on the erroneous belief that the 2002 BOP Policy and the 2005 BOP Rule continue to govern RRC placements, as he fails to even recognize the existence of the 2008 BOP Rule. (*Id.*) First, petitioner's moving papers cite exclusively to both the invalidated 2002 and 2005 BOP policies and rules and nowhere refers to the 2008 BOP Rule. (Pet. at 2-3; Pet. Reply at 2, 3-4.) Second, petitioner argues that exhaustion would have been futile because his petition would have "most likely" been rejected under a BOP policy which prohibits consideration for RRC placement of an inmate who has not served at least ninety

percent of his sentence. (Pet. Reply at 3-4.) The 2008 BOP Policy, however, does not require an inmate to have served any specific percentage of his prison term before he is considered for community confinement. 28 C.F.R. § 570.22. Rather, it tracks the language of the Second Chance Act and allows the BOP to consider an inmate for community confinement any time within the last 12 months of his prison term or longer, as permitted by statute. *Id*; *see also* 28 C.F.R. § 570.21.

Thus, petitioner's futility argument appears to be based on a misunderstanding of current BOP policies and is ultimately incorrect. As noted earlier, RRC placements are now governed by the 2008 BOP Rule, 28 C.F.R. § 570.22, and not the 2002 BOP Policy or the 2005 BOP Rule. Thus, petitioner is not challenging the validity of the rule which currently governs RRC placement and validly implements the requirements of the Second Chance Act, and his arguments with respect to the previous BOP rules are moot. *See Levine*, 455 F.3d at 79 (finding plaintiff's challenge to 2002 BOP Policy moot because the policy had been superseded by the 2005 BOP Rule)(citing *Princeton University v. Schmid,* 455 U.S. 100, 102-03 (1982)(holding that where a new regulation has superseded an old one, the "validity of the old regulation is moot, for this case has lost its character as a present, live controversy")); (citing also *Wilkinson v. Skinner,* 462 F.2d 670, 671-72 (2d Cir. 1972)(holding that the amendment

of a prison regulation rendered challenge to constitutionality of old regulation moot)).

The 2008 BOP Policy, 28 C.F.R. § 570.22, does not preclude the relief that petitioner seeks. In fact, consistent with the Second Chance Act, the 2008 BOP Rule instructs BOP officials that inmates are eligible for consideration for transfer to an RRC seventeen to nineteen months prior to their release and that the maximum length of pre-release RRC placement is the twelve months prescribed by the Second Chance Act. *See* 28 C.F.R. § 570.22; *see also Dadaille v. Terrell*, Doc No. 09-cv-5036, 2010 WL 1930267, at *3 (E.D.N.Y. May 10, 2010)(finding BOP Memoranda instructing BOP officials that inmates are eligible for consideration for transfer to an RRC seventeen to nineteen months prior to their release and that the twelve month maximum length of a pre-release placement in an RRC complies with the Second Chance Act); *Rosenthal v. Killian*, 667 F. Supp. 2d. 364, 367 (S.D.N.Y. 2009) (same).

Moreover, even if it is likely that petitioner's administrative appeals would have been denied, such a showing would not prove futility. *See Collins v. Zickefoose,* No. 3:08 Civ. 747, 2008 WL 4980361, at *3 (D. Conn. Nov. 20, 2008)("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Lightning may strike; and even if it doesn't, in denying relief

the [BOP] may give a statement of its reasons that is helpful to the district court in considering the merits of the claim.") (*quoting Greene v. Meese,* 875 F.2d 639, 641 (7th Cir. 1989) (emphasis in original)).

Petitioner thus has not made a showing that the administrative remedies available to him preclude the relief he seeks. Accordingly, dismissal is the proper remedy because petitioner has not exhausted the state remedies available to him and the futility exception does not apply. *See Dadaille*, 2010 WL 1930267, at *4 (dismissing a 28 U.S.C. § 2241 writ of habeas corpus because defendant failed to exhaust his administrative remedies and the futility exception did not apply).

2. **The BOP Properly Considered Petitioner For RRC Placement Pursuant to the Second Chance Act**

Even if this court found that petitioner's failure to exhaust his administrative remedies was excused, his claim, nevertheless, would fail on the merits.

The BOP has discretionary authority in directing the place of imprisonment as well as the transfer of federal prisoners to RRCs. 18 U.S.C. § 3621(b); *see Levine,* 455 F.3d at 80 ("Congress's use of the language 'may designate' in [18 U.S.C. § 3621(b)] seemingly endows the BOP with 'broad discretion.'"). The legislative history of the Second Chance Act "'prohibit[s] Federal judges from sentencing defendants to a

the [BOP] may give a statement of its reasons that is helpful to the district court in considering the merits of the claim.") (*quoting Greene v. Meese,* 875 F.2d 639, 641 (7th Cir. 1989) (emphasis in original)).

Petitioner thus has not made a showing that the administrative remedies available to him preclude the relief he seeks. Accordingly, dismissal is the proper remedy because petitioner has not exhausted the state remedies available to him and the futility exception does not apply. *See Dadaille*, 2010 WL 1930267, at *4 (dismissing a 28 U.S.C. § 2241 writ of habeas corpus because defendant failed to exhaust his administrative remedies and the futility exception did not apply).

2. **The BOP Properly Considered Petitioner For RRC Placement Pursuant to the Second Chance Act**

Even if this court found that petitioner's failure to exhaust his administrative remedies was excused, his claim, nevertheless, would fail on the merits.

The BOP has discretionary authority in directing the place of imprisonment as well as the transfer of federal prisoners to RRCs. 18 U.S.C. § 3621(b); *see Levine,* 455 F.3d at 80 ("Congress's use of the language 'may designate' in [18 U.S.C. § 3621(b)] seemingly endows the BOP with 'broad discretion.'"). The legislative history of the Second Chance Act "'prohibit[s] Federal judges from sentencing defendants to a

community correction facility'" and "reiterates that the Bureau of Prisons has sole and exclusive authority to designate the facility where prisoners will serve a sentence and to order a transfer from one facility to another." *Daraio v. Lappin,* No. 08-cv-1812, 2009 WL 303995, at *6 (D. Conn. Feb. 9, 2009) (internal quotation omitted). Further, "the BOP retains discretion . . . provided such pre-release confinement is practicable and the BOP considers the statutory factors." *Id.* (citing 18 U.S.C. § 3624(c)(1)). Therefore, for a court to order the BOP to reconsider its placement recommendation, it must find that the BOP has abused its discretion by failing to consider the statutory factors. *See Fournier v. Zickefoose,* 620 F. Supp. 2d 313, 318 (D. Conn. 2009)("[O]nce the court has determined that the BOP did not exceed its authority in reaching its decision, it is beyond the purview of the court to second guess the outcome.").

Applying the standard set forth above, the court finds that the BOP properly followed the Second Chance Act, applied the factors set forth in 18 U.S.C. § 3621(b), and did not abuse its discretion. The BOP was within its authority to grant petitioner 92 days of RRC placement. The RRC Form indicated that the BOP considered the statutorily mandated factors in considering the length of petitioner's RRC placement. *See* Page Decl. at Ex. 1; *Dadaille*, 2010 WL 1930267, at *5 (finding that

13

the BOP properly applied the statutory factors because those factors were listed on the RRC form.).  Petitioner's recitation of factual circumstances which support a longer RRC placement is unavailing, as he fails to demonstrate that his Unit Team failed to provide an individualized RRC placement decision.  As the Unit Team's recommendation considered the mandated statutory factors listed in 18 U.S.C. § 3621(b), the court may not disturb this recommendation, especially in light of the broad discretion the BOP was given by Congress.  *See Levine,* 455 F.3d at 83 ("The BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility.").  However, in light of petitioner's compelling arguments and obviously sincere desire to rehabilitate and successfully prepare for reentry, the court strongly encourages the BOP to make every effort to place petitioner in an RRC in accordance with his Unit Team's original recommendation.

## CONCLUSION

For the foregoing reasons, the court denies petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, but encourages the BOP to make every effort to afford petitioner a longer RRC placement, in accordance with his Unit Team's original recommendation.  Because petitioner has not

14

made a substantial showing of the denial of any constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997)(*abrogated on other grounds*); *United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir. 1997)(discussing the standard for issuing a certificate of appealability). Additionally, the court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this judgment would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is respectfully requested to enter judgment accordingly, to close this case, and to a serve a copy of this memorandum and order along with the judgment upon petitioner.

**SO ORDERED**

DATED: August 9, 2010
      Brooklyn, New York

                                      /s/
                              **Kiyo A. Matsumoto**
                              United States District Judge